COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Friedman and Callins
Argued at Leesburg, Virginia


TOLGA BURAK AKSOY, ET AL.

                                             MEMORANDUM OPINION* BY
v.        Record No. 0507-23-4                JUDGE RANDOLPH A. BEALES
                                                     APRIL 16, 2024
IN STOCK TODAY CABINETS, LLC


                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Tania M. L. Saylor, Judge

            Samuel C. Moore (Law Office of Samuel C. Moore, PLLC; Law
            Office of Moore, Christoff & Siddiqui, PLLC, on briefs), for
            appellants.

            James N. Markels (Glenn Golding; Tyler Asher; Muhammad
            Elsayed; Croessmann & Westberg, P.C.; Elsayed Law PLLC, on
            brief), for appellee.


        Tolga Burak Aksoy and Lena Consulting, LLC appeal the trial court's denial of their motion

to set aside a jury verdict in favor of In Stock Today Cabinets, LLC ("IST") on IST's claims for

fraud and breach of duty of loyalty.  On appeal, Aksoy and Lena Consulting contend that IST failed

to prove that Aksoy intentionally misrepresented any material fact upon which IST relied, that

Aksoy breached any fiduciary duty of loyalty that he owed to IST, or that IST incurred damages in

connection with its claims.  Aksoy and Lena Consulting also contend that the trial court erred by

denying their alternative motion for remittitur of the jury's award of punitive damages.

                                    I.  BACKGROUND

        As the Supreme Court has stated, and in accordance with well-established principles,

"We review the evidence in the light most favorable to the plaintiff [IST], [as] the prevailing

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

party below." *Morgen Indus., Inc. v. Vaughan*, 252 Va. 60, 62 (1996); *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021). "The verdict of the jury in favor of [IST], upon which the trial court entered judgment, settles all conflicts of testimony in [IST's] favor and entitles [IST] to all just inferences deducible therefrom." *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 584 (2000) (quoting *Pugsley v. Privette*, 220 Va. 892, 901 (1980)). Consequently, we recite the facts of this case in the light most favorable to IST.

IST is the sole regional distributor of Fabuwood brand cabinets in Fairfax County. Pursuant to its contract with Fabuwood, IST is prohibited from selling non-Fabuwood cabinets without Fabuwood's permission. Although IST primarily sells Fabuwood cabinets, it is authorized to sell certain lines of non-Fabuwood brand cabinets which do not directly compete with Fabuwood's products.

IST sells cabinets to cabinet dealers, builders, and contractors. For its builder and contractor customers, IST typically takes measurements, participates in onsite visits, and creates designs. IST does not, however, generally perform these additional services for cabinet dealer customers because the cabinet dealers purchase their own cabinet displays for exhibition in their own physical showrooms. For these reasons, IST sells cabinets to cabinet dealers at a preferred discount rate of between 57% and 61%. By contrast, IST sells cabinets to builders and contractors at a lesser discount rate of between 40% and 50%. IST does not sell cabinets directly to homeowners and instead refers them to an appropriate dealer or contractor.

In 2016, IST hired Aksoy as a full-time salesman and account manager employee. Aksoy worked from IST's office, and IST granted him access to its accounting software and the authority to enter contracts on its behalf. Aksoy's job duties included selling IST's cabinets, visiting customers, taking measurements, and inputting data. IST paid Aksoy a monthly salary of $3,500 plus commissions on sales. IST also trained Aksoy and provided him with benefits

and work resources, including health insurance, business cards, a company vehicle, and a company cellphone.

While working for IST, Aksoy created Lena Consulting, LLC. In late 2018 or early 2019, Aksoy then requested that IST pay his salary and other compensation to Lena Consulting for tax purposes. IST agreed to Aksoy's request.

In 2019, without informing IST, Aksoy created three business names that he planned to use as cabinet dealer companies, Cabinets for Builders ("CFB"), Arlington Kitchen and Bath ("AKB"), and Herndon Kitchen and Bath ("HKB"). Aksoy never formally registered either AKB or HKB as a business entity in Virginia or any other state. Aksoy entered CFB, AKB, and HKB as cabinet dealers in IST's accounting software, and he used false addresses for AKB and HKB. AKB and HKB did not have any facility or physical address. CFB did not have a physical cabinet showroom as its only address was Aksoy's apartment, an address which Aksoy did not list on IST's accounting software. In addition, in two sales reports to IST, Aksoy fabricated the existence of a designer at HKB that he named "Tom." On one occasion Aksoy stated that "Tom asked [for] an estimate for a kitchen," and, on another occasion, he stated that "Tom" asked for an estimate on bathroom vanities.

Aksoy used his dealer entities as intermediaries to sell IST's Fabuwood brand cabinets to builders, contractors, and homeowners. Aksoy, through his dealers, paid IST for cabinets at a discount rate of about 60% (IST's maximum discount rate that it offered to cabinet dealers). Aksoy then invoiced the end customers for a larger sum than what Aksoy had paid IST – that is, a sum that reflected IST's discount rate for builders and contractors of about 50%. By using his dealers as intermediaries in this manner, Aksoy was able to keep the approximately 10% difference between the discount rates. IST was not aware that Aksoy was using these dealer entities as intermediaries for himself and for his own benefit.

Also unbeknownst to IST, Aksoy began selling non-Fabuwood brand cabinets to customers through Lena Consulting and CFB. Specifically, Aksoy used IST's software to sell cabinets that IST was not contractually authorized to sell to IST's existing and prospective customers.

In May 2020, one of the co-owners of IST, Mustafa Bozoklu, discovered that Aksoy had issued an estimate on IST's behalf for cabinets manufactured by one of Fabuwood's competitors. According to Bozoklu's testimony at trial, when he confronted Aksoy about the suspicious estimate, Aksoy assured him that he "shouldn't be worried about [the estimate]" and that Aksoy "would take care of it." Around the same time, Bozoklu also discovered in IST's accounting software that AKB had purchased cabinets from IST using IST's cabinet dealer discount rate and that AKB appeared to be "a good customer." When Bozoklu asked Aksoy about visiting AKB's showroom, Aksoy told him that AKB's showroom was "under construction." When Bozoklu looked into AKB, he discovered that the address for AKB that Aksoy had entered into IST's accounting software was actually the address for a UPS store rather than a real address for AKB.

Bozoklu testified that he "felt something fishy" was going on. He set a meeting with Aksoy, himself, and Emin Halac, the other co-owner of IST. At the meeting, Aksoy admitted that he sold non-Fabuwood products to customers. Aksoy also admitted that AKB was not a real cabinet dealer. Aksoy denied, however, that he had registered any other fictitious cabinet dealers in IST's accounting software.

IST terminated Aksoy's employment shortly thereafter in May 2020. IST subsequently filed a complaint in the Circuit Court of Fairfax County asserting claims for tortious interference

with business expectancy and fraud against Aksoy and Lena Consulting, as well as an additional claim for breach of duty of loyalty against Aksoy.[1]

At trial, Halac testified regarding IST's business, the discount rates it offered its customers, and the terms of Aksoy's employment. Through Halac's testimony, IST also introduced invoices from the sales Aksoy had made on IST's behalf to Aksoy's own dealer entities. Halac testified that Aksoy had not kept complete records of Aksoy's dealers' resales of IST's cabinets. Comparing the available records of Aksoy's dealers' resales with IST's invoices, Halac estimated that Aksoy's dealers resold IST's cabinets at an average markup of 52%. Without objection, IST introduced a chart that applied this 52% markup rate to Aksoy's resales. Consistent with the chart, Halac testified that the total estimated profit that IST lost from Aksoy's resales of Fabuwood brand cabinets was $105,157.37.

Halac also testified regarding the sales of non-Fabuwood cabinets that Aksoy, through Lena Consulting and CFB, had made to IST's existing and prospective customers. Halac explained that IST did not permit Aksoy to sell cabinets beyond its existing cabinet offerings because doing so would jeopardize its contract with Fabuwood. Halac added that in the event that a customer did not wish to purchase Fabuwood brand cabinets, IST could still serve the customer because Fabuwood had authorized IST to sell certain lines of non-Fabuwood brand cabinets. Similarly, Halac testified that, although IST did not sell cabinets directly to homeowners, it would encourage homeowners to work with its contractors to take advantage of IST's discounts. Halac explained that, in the "very rare case" that a homeowner did not have a contractor, IST was "obligated" to refer the homeowner to a cabinet dealer.

---

[1] IST also asserted claims against Aksoy and Lena Consulting for conversion, which it later nonsuited.

Halac further testified that, based upon his 13 years of experience selling cabinets, he estimated that Aksoy made at least a 30% profit on sales of non-Fabuwood cabinets. IST also introduced paid invoices that were issued by CFB and Lena Consulting. IST then introduced a chart calculating the total profits it lost from Aksoy's sales of non-Fabuwood cabinets to be $59,420.20 based on Halac's profit estimate.

During cross-examination, Halac testified that Aksoy generated approximately $1.5 million in gross sales for IST in 2019. He also acknowledged that IST issued Aksoy (and later Lena Consulting) a 1099 form reflecting Aksoy's compensation rather than issue a W-2 form.[2] Halac further acknowledged that IST had authorized Aksoy to sell cabinets that were not comparable to Fabuwood on behalf of USA Cabinet Store, a cabinet retail business created by Halac and Bozoklu.

IST also presented the testimony of Jamal Elmejjad, the owner of a development group that builds houses. Elmejjad testified that he began working with Aksoy while Elmejjad was building a house for a client in Annandale. Elmejjad stated that he brought this client to IST's showroom in Merrifield to pick out materials, designs, and colors for the house. Elmejjad testified that Aksoy gave him a business card that contained IST's name. Elmejjad also testified that he later received emails from Aksoy via Aksoy's IST email address. Elmejjad stated that he eventually made a deal with Aksoy to purchase cabinets from IST. Once Elmejjad received the invoice reflecting the deal, he made a check out to "In Stock Cabinet" for a down payment on the cabinets. However, Elmejjad testified that he later had a phone conversation with Aksoy during which Aksoy asked Elmejjad to make the check out to "Cabinets for Builders" instead of IST. Elmejjad then voided the check to IST and wrote out a check to "Cabinets for Builders."

---

[2] Bozoklu later testified that, at the time IST agreed to pay Aksoy's salary and commissions to Lena Consulting and issue it a 1099 form, Bozoklu did not know the difference between a 1099 form and a W-2 form.

At the conclusion of IST's evidence, Aksoy made a motion to strike, which the trial court denied. Thereafter, Aksoy presented evidence and testified that he did not have an employment contract with IST, that he was an independent contractor, and that IST also worked with other "outside sales consultants." Aksoy further testified that he did not redirect any of IST's existing or prospective customers to his own dealer entities, but instead sold customers non-Fabuwood cabinets when they did not wish to purchase Fabuwood cabinets from IST. He added that some of his sales were made to individual homeowners to whom IST did not sell cabinets at all. Aksoy stated he did not know how much he profited by selling non-Fabuwood cabinets. When asked whether a 30% net profit on individual sales was "anywhere close to accurate," Aksoy answered, "Yes. Based upon my books, and every project is different. I don't honestly know what is the profit rates [sic]. Sometimes it's maybe close to that [30%], sometimes less, . . . I don't have an exact number." Finally, Aksoy testified that IST's discount rate for contractors and builders was usually 50%.

Following the conclusion of all the evidence, the trial court instructed the parties that, due to time constraints, they each had approximately 15 minutes to present their closing arguments.[3] Aksoy and Lena Consulting requested additional time and proposed striking a juror who had time constraints, to which IST objected. The trial court rejected the proposal, given IST's objection and given that the parties had agreed to the duration of the trial.

During its closing argument, IST asserted that Aksoy stole IST's customers, directly competed with IST using its own resources, and provided IST false information upon which it relied. IST requested that the jury award it a total of $164,577.57 in compensatory damages based on its calculations and $350,000 in punitive damages. In response, Aksoy argued that his cabinet dealer entities were real companies that paid IST for their cabinet purchases. Aksoy

---

[3] The trial judge explained that "this was a four-day case" that had been "set for two."

further argued that he was an independent contractor and that his businesses only made sales to customers who would not purchase Fabuwood cabinets from IST.

Following closing arguments, the jury returned a verdict in favor of IST finding Aksoy and Lena Consulting jointly and severally liable to IST for fraud. The jury awarded IST $82,000 in compensatory damages and $182,000 in punitive damages on the fraud claim. The jury also returned a verdict finding Aksoy liable to IST for breach of duty of loyalty and awarded IST $50,000 in compensatory damages and $100,000 in punitive damages. The jury returned a verdict in favor of Aksoy and Lena Consulting with respect to IST's claims for tortious interference with business expectancy.

Aksoy and Lena Consulting then filed a motion to set aside the jury's verdict or, in the alternative, for remittitur with respect to the jury's award of punitive damages. They argued that IST failed to prove that Aksoy owed it a duty of loyalty or intentionally misrepresented any material fact upon which IST relied. Aksoy further asserted that the evidence failed to prove that IST suffered any damages. As to their alternative request for remittitur, Aksoy and Lena Consulting argued that, at most, IST's compensatory damages could be $41,000 under the fraud claim instead of $82,000 and that the punitive damages award was excessive, disproportionate, and shocked the conscience. They further asserted that Aksoy would have difficulty paying the punitive damages award given that his monthly salary was $3,500 while working for IST.

Following a hearing, the trial court denied Aksoy's and Lena Consulting's post-trial motions to set aside the jury's verdict and to request remittitur. In support of its ruling, the trial court found that the jury's verdict was not plainly wrong or without credible evidence to support it, that the jury's verdict was not so excessive as to shock the conscience, and that the award of punitive damages was reasonable considering the evidence presented. Aksoy and Lena Consulting now appeal to this Court.

- 8 -

## II. ANALYSIS

On appeal, Aksoy and Lena Consulting argue that the trial court erred by denying their motion to set aside the jury's verdict because the verdict was not supported by sufficient evidence. They further argue that the trial court erred in denying their motion for remittitur with respect to the award of punitive damages.[4]

### A. Sufficiency of the Evidence

The Supreme Court has stated, "It is well-settled that 'a party who comes before us with a jury verdict approved by the [trial] court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc.*, 299 Va. at 622 (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [trial] court's judgment sustaining a jury verdict unless it is plainly wrong or without evidence to support it." *Id.* (first alteration in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)). In reviewing the trial court's denial of a motion to set aside a jury verdict, this Court considers "whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Id.* (quoting *Parson*, 296 Va. at 524).

Aksoy and Lena Consulting contend that the trial court's denial of their motion to set aside the jury's verdict should be reversed by this Court for three reasons: (1) IST failed to prove that Aksoy intentionally misrepresented any material fact upon which IST relied; (2) IST failed to prove

---

[4] Aksoy and Lena Consulting also argue that the trial court erred by denying their motion to strike. However, because they presented evidence after the trial court denied their motion to strike and did not renew their motion to strike at the close of all the evidence, they waived their right to stand upon that motion on appeal. *Nielsen v. Nielsen*, 73 Va. App. 370, 379 n.4 (2021). As the Supreme Court has stated, "When a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion." *McDowell v. Commonwealth*, 282 Va. 341, 342 (2011). Consequently, we cannot reach any arguments by Aksoy or Lena Consulting that were not preserved by their motion to set aside the verdict or their motion for remittitur. *See id.*

that it suffered any damages; and (3) the evidence failed to prove that Aksoy breached any fiduciary duty he owed to IST. We review each of these arguments in turn.

1. <u>Whether Sufficient Evidence Supports the Jury's Verdict on IST's Fraud Claim</u>

As the Supreme Court has stated, "One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 148 (1994). Here, Aksoy and Lena Consulting specifically contend that IST "failed to prove that (i) Appellants intentionally misrepresented any material facts; (ii) there was an intent to mislead; and (iii) Appellee relied on any misrepresentation."

When viewed in the light most favorable to IST, the record now before this Court shows that Aksoy intentionally misrepresented to IST that Aksoy's so-called dealers were, in fact, legitimate cabinet dealers. Indeed, IST only granted its cabinet dealer discount to legitimate businesses that displayed cabinets for purchase in showrooms – showrooms which Aksoy's dealers did not have. In addition, Aksoy eventually admitted to Bozoklu that AKB was not a legitimate dealer.

Aksoy's additional misrepresentations further support the jury's implicit finding that, when Aksoy registered his dealers in IST's accounting software, he did so with the intent to mislead IST into believing that his fake dealers were legitimate cabinet dealers entitled to IST's highest discount. For example, Aksoy represented to IST in his weekly sales reports that he had been speaking to "Tom," a supposed designer at HKB, regarding estimates for IST products despite the fact that Aksoy later admitted that "Tom" was not a real person. Similarly, Aksoy registered his fake cabinet dealers in IST's accounting software with false addresses. In addition, when Bozoklu informed Aksoy that he wanted to visit AKB's showroom, Aksoy told Bozoklu that AKB's showroom was "under construction" even though AKB did not have any address or showroom at

all.  After admitting to Bozoklu and Halac that AKB was not a real cabinet dealer, Aksoy also falsely represented to them that he had not registered any other fictitious cabinet dealers in IST's accounting software – when, in fact, he had.

Contrary to Aksoy's and Lena Consulting's arguments, the record supports the jury's implicit finding that Aksoy's false representations were material and that IST relied on them. The evidence shows that IST relied on Aksoy's representations that his so-called dealers were legitimate cabinet dealers when IST invoiced sales and for accounting purposes.  IST introduced evidence showing that, absent Aksoy's representations, it would have sold its cabinets to Aksoy's dealers at a lower discount rate, or alternatively, refused to make cabinet sales that jeopardized its contracts with cabinet manufacturers.  For all of the foregoing reasons, the jury was not plainly wrong or without evidence to conclude that Aksoy intentionally misrepresented material facts upon which IST relied.  Consequently, the evidence at trial was sufficient to support the jury's verdict on the fraud claim, and the trial court did not err in denying the motion to set aside the verdict on the claim of fraud.

2. Whether the Evidence Supports the Jury's Award of Compensatory Damages

Generally, a plaintiff seeking damages in a civil case must prove two primary factors: "First, a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted.  Second, a plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages." *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 189 (2006).  In addition, "[w]hen an established business . . . is 'injured, interrupted, or destroyed, the measure of damages is the diminution in value of the business by reason of the wrongful act, measured by the loss of the usual profits from the business.'" *Banks v. Mario Indus. of Va., Inc.*, 274 Va. 438, 455 (2007) (quoting *Saks Fifth Ave., Inc.*, 272 Va. at

188).  Here, Aksoy and Lena Consulting argue that IST failed to establish that it sustained any damages in connection with its claims.

At trial, IST introduced, without objection, a chart calculating that it lost $105,157.37 in what should have been its profits but, instead, were resales made by Aksoy's fake dealers of IST's cabinets.  IST calculated these damages by comparing the available records of those resales by Aksoy's fake dealers with IST's invoices showing the purchase price paid to IST by Aksoy's fake dealers.

Similarly, IST also introduced a chart calculating the profits it lost from Aksoy's sales of non-Fabuwood cabinets to be $59,420.20, based on Halac's estimate that Aksoy made a profit of 30% from those sales.  Although Aksoy and Lena Consulting contend on appeal that these sales did not harm IST because IST could not sell non-Fabuwood cabinets, there was sufficient evidence to permit the jury to disagree.  Indeed, Halac testified that IST sold certain lines of non-Fabuwood cabinets to its customers with Fabuwood's permission.

In total, IST presented financial records, calculations, and testimony showing that it had suffered $164,577.57 in damages.  The jury had the opportunity to review IST's evidence and ultimately awarded IST $132,000 in compensatory damages.  Given all of this evidence in the record, described *supra*, we certainly cannot say that the jury's award of compensatory damages was plainly wrong or without evidence to support it.  Consequently, the trial court did not err in denying Aksoy's and Lena Consulting's motion to set aside the jury's verdict on compensatory damages for any lack of evidence of those damages.

### 3. Whether Aksoy Breached His Fiduciary Duty to IST

At oral argument before this Court, counsel for Aksoy acknowledged that Aksoy owed a fiduciary duty to IST as an agent, but argued that Aksoy did not breach this duty.[5] The evidence at trial was certainly sufficient to support the jury's implicit finding that Aksoy owed a fiduciary duty of loyalty to IST as an employee or, at minimum, as an agent. Aksoy was hired by IST as an employee, he was trained by IST, and he was subject to IST's control and supervision over the manner in which he performed his work. IST set Aksoy's expected work hours (from 9:00 a.m. to 6:00 p.m. five days per week). IST provided Aksoy an office in which to conduct his work. Aksoy had to ask his supervisor when he wanted time off work. Aksoy also referred to himself as an employee in his work emails. In addition, IST paid Aksoy a salary and IST provided him with employee benefits, such as health insurance, and he was given work resources by IST, including a cell phone, laptop, software, business cards, and a company car. Furthermore, IST's owners entrusted Aksoy with "all the QuickBooks access," and he had the ability to collect payments on IST's behalf, had access to its system for designing cabinets and its list of customer leads, and had IST's authorization to order products directly from Fabuwood. Under these circumstances, Aksoy certainly owed a fiduciary duty of loyalty to IST. *See Banks*, 274 Va. at 453; *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 98 (1982) ("As a general rule, a person is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed."); *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289 (2003) ("We have long recognized that

---

[5] Specifically, this Court asked counsel for Aksoy, "At a minimum, it seems that he [Aksoy] was an agent of the entity [IST], and as a result wouldn't there still be a fiduciary duty that is owed which he breached which resulted in these damages and would entitle In Stock to these punitive damages?" Counsel for Aksoy answered, "Yes, Your Honor, and a couple points, but it all does lead to the punitive damages analysis and our context. He certainly has an agent duty at a minimum while in the performance of his duties," but counsel for Aksoy went on to contend that Aksoy did not breach that fiduciary duty.

under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment.").

As discussed *supra* in Part (A)(1), Aksoy was engaged in a series of fraudulent schemes to deceive IST – and to sell to IST's customers behind IST's back. For example, when Elmejjad, a builder, made a check out to IST to purchase cabinets, Aksoy instead instructed him to make the check out to "Cabinets for Builders" – one of Aksoy's so-called dealers. Aksoy's conduct here – of hatching and engaging in multiple schemes to divert funds from his employer to his own companies and to himself – was sufficient to support the jury's finding that Aksoy breached his fiduciary duty of loyalty to IST. Consequently, the trial court did not err by denying Aksoy's motion to set aside the jury's verdict on the breach of loyalty claim.

## B. Motion for Remittitur

"This Court reviews the remittitur of punitive damage awards de novo upon independent review of the record, giving substantial weight to the trial court's action." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 580 (2011). Remittitur is the "process by which a court requires either that the case be retried, or that the damages awarded by the jury be reduced." *Remittitur*, *Black's Law Dictionary* (11th ed. 2019); *see* Code § 8.01-383.1. As the Supreme Court has explained, "To justify remittitur, a jury's award must be so excessive that it shocks the conscience of the trial court, indicating that the jury's decision was motivated by 'passion, corruption or prejudice.'" *Coalson v. Canchola*, 287 Va. 242, 249 (2014) (quoting *Condo. Servs., Inc.*, 281 Va. at 580). In considering whether to remit a jury's award of punitive damages, the trial court "should consider the 'reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, whether the award will amount to a double recovery, the proportionality between the compensatory and punitive

damages, and the ability of the defendant to pay.'" *Id.* (quoting *Poulston v. Rock*, 251 Va. 254, 263 (1996)).

Aksoy and Lena Consulting argue that the trial court erred by denying their motion for remittitur of the jury's award of punitive damages because they contend that the award was contrary to law and fact, was excessive, and was unreasonable. However, an award of punitive damages is appropriate here because Aksoy engaged in intentionally fraudulent conduct that was wrongful and that needs to be deterred. *See Horn v. Webb*, 320 Va. 70, 81 (2023) (stating that punitive damages are allowable "where there is misconduct or actual malice"); *Coalson*, 287 Va. at 249 ("The purpose of punitive damages is to provide protection of the public, . . . punishment to [the] defendant, and . . . a warning and example to deter him and others from committing like offenses." (alterations in original) (internal quotation marks omitted)).

Furthermore, given the specific facts of this case, the punitive damages awarded here are not excessive or disproportionate. Aksoy repeatedly and intentionally engaged in deceptive behavior and effectively stole from his employer. Aksoy deceived IST into believing that his fake cabinet dealers were legitimate so that he, through his fake dealers, could receive IST's maximum discount. Aksoy registered these so-called cabinet dealers in IST's software with false addresses. To further the deception, Aksoy fabricated the existence of a person named "Tom" as a designer at HKB with whom Aksoy claimed that he had been speaking – when in fact "Tom" never even existed. When Aksoy's supervisor, Bozoklu, informed Aksoy that he wanted to visit AKB's showroom, Aksoy tried to cover up the truth. Aksoy lied to Bozoklu that AKB's showroom was "under construction" even though, in reality, AKB was not a legitimate cabinet dealer and had no real address or showroom at all. When Bozoklu later confronted him, Aksoy eventually admitted that AKB was not a real cabinet dealer, but then also falsely represented that he had not registered any other fictitious cabinet dealers in IST's software – when, in fact, he had.

- 15 -

Based on Aksoy's brazen, repeatedly deceptive conduct here, and given that Aksoy was a high-performing salesman, we cannot say that $282,000 in punitive damages – $182,000 for fraud and $100,000 for breach of his duty of loyalty – was disproportionate or an excessive punishment. The compensatory damages awarded here were $82,000 for fraud and $50,000 for Aksoy's breach of his duty of loyalty. Not only did Aksoy intentionally engage in the fraudulent and disloyal conduct that breached his fiduciary duty and caused these damages to IST, he also lacked remorse for his wrongful actions. When Aksoy was asked at trial whether he felt he had treated IST honestly, Aksoy stated, "Actually, I did my best. I sold over three million dollars." According to the record before this Court, there is no indication that Aksoy would have ever ceased using his fraudulent schemes to damage IST until he was caught and stopped. Under these circumstances, the punitive damages awards of $182,000 for fraud and $100,000 for breach of Aksoy's duty of loyalty were appropriate as a "punishment to [the] defendant, and . . . a warning and example to deter him and others from committing like offenses." *Coalson*, 287 Va. at 249 (alterations in original).

Aksoy and Lena Consulting also contend that the trial court erred by denying their request for remittitur of punitive damages because they have limited ability to pay the punitive damages awarded. In support of their claim, they point out that Aksoy earned a $3,500 monthly salary while working for IST. However, IST terminated Aksoy's employment in May 2020 – more than two and a half years before the trial in this case. The record is silent as to Aksoy's and Lena Consulting's current assets and liabilities. A defendant who has failed to present evidence of his ability to pay at trial "cannot prevail before this Court on [his] claim that the amount of punitive damages would be oppressive." *Id.* at 251 (alteration in original) (internal quotation omitted).

Having considered Aksoy's and Lena Consulting's arguments on appeal and the specific facts of this case, we find that the amount of punitive damages awarded by the jury here "is not so excessive as to shock the conscience of the court, nor does it appear that the jury was influenced by passion, corruption or prejudice." *Condo. Servs., Inc.*, 281 Va. at 581. Consequently, we hold that the trial court did not err by denying Aksoy's and Lena Consulting's motion for remittitur on the award of punitive damages.

## III. CONCLUSION

For all of the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*